IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANK CLARK,                          :    CIVIL ACTION
                                      :    NO. 12-5897
            Plaintiff,                :
                                      :
      v.                              :
                                      :
INTERNATIONAL BROTHERHOOD OF          :
ELECTRICAL WORKERS, LOCAL #98,        :
                                      :
            Defendant.                :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         December 4, 2013

            Plaintiff Frank Clark brings this employment
discrimination action against his former employer, Defendant
International Brotherhood of Electrical Workers, Local #98
("Local 98").  Clark claims that his employment was terminated
on the basis of his race, in violation of Title VII of the Civil
Rights Act of 1964, the Pennsylvania Human Relations Act
("PHRA"), and 42 U.S.C. § 1981.  Local 98 has moved for summary
judgment, and, for the reasons that follow, the Court will grant
the motion in its entirety.

## I.   FACTUAL BACKGROUND

            Clark, an African-American, began working for Local 98
as an office helper in 2006, while he was home in the
Philadelphia area on a break from college.  Clark Dep. 16:13-18,
ECF No. 13-4.  He became a full-time employee on March 17, 2008.

Compl. ¶ 18, ECF No. 1.  From shortly before he started working full time until the termination of his employment, Clark worked with two co-workers – Kevin Corazo and Brian Young – both of whom are Caucasian.  Clark Dep. 29:16-19.  Clark, Corazo, and Young were all supervised by Bob Poston, who would assign the three of them duties each morning, such as cleaning the union hall, stocking supplies, and setting up for events.  Poston Aff. ¶ 5, ECF No. 13-4; Clark Dep. 28:22-24.

For Corazo and Young, those duties occasionally included making deliveries using Local 98-owned vehicles or personal vehicles.  Poston Aff. ¶¶ 7, 10.  Clark, however, was not authorized to make deliveries, as his license was suspended at the time he was hired, and Local 98 requires its employees to provide verifiable proof that they possess a valid driver's license before performing any work-related driving functions. Clark Dep. 46:23-47:1; Poston Aff. ¶ 8; Dougherty Aff. ¶ 9, ECF No. 13-4.  Although his driving privileges were later restored, Clark did not inform Poston of that fact.  Clark Dep. 49:22-50:3.  Accordingly, Clark was never officially authorized to operate a vehicle as part of his job duties.  Furthermore, Clark admits that Poston never assigned him a duty that involved driving, nor did Poston instruct him to drive somewhere on behalf of Local 98.  Poston Aff. ¶¶ 14, 17; Clark Dep. 70:20-71:1, 94:16-24.

Nonetheless, Clark testified that he did in fact perform some driving duties for his employer. Specifically, Clark explained in his deposition that he and his coworkers would "take turns driving" once Clark's license was no longer suspended. Clark Dep. 73:8-9. He also began submitting gas receipts to Local 98 for reimbursement, as his coworkers did. Id. at 76:5-77:23. Although no supervisor had given him permission to do so, Clark says that his coworker, Kevin Corazo, explained the reimbursement procedure to him and told him that he could submit his receipts. Id. at 77:8-78:17. In April and May of 2008, Clark submitted $290 worth of receipts for reimbursement, which were signed off on by Tim Browne, an executive board member of Local 98. Def.'s Mot. Summ. J., Exs. 10-16, Petty Cash Receipts, ECF No. 13-5; Def.'s Statement of Undisputed Facts ¶ 36, ECF No. 13-2.

Then, on May 22, 2008, Clark asked a different Local 98 board member to sign off on a reimbursement request. Clark Dep. 112:4-12. That board member declined to do so, and later that day Clark received an urgent voicemail from Poston, his supervisor. Id. at 112:21-24. Poston informed him that he was not supposed to be submitting his gas receipts for reimbursement, and that he had to meet with the business manager the following Monday. Id. at 113:1-11. At that meeting, the

3

manager accused Clark of stealing from the union and terminated his employment.  Id. at 119:10-22.

## II.  PROCEDURAL HISTORY

In July 2008, Clark filed a timely written charge of discrimination against Local 98 with the Pennsylvania Human Relations Commission and with the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued Clark a right-to-sue letter on or about July 18, 2012.

On October 16, 2012, Clark filed his complaint in this matter.  Local 98 answered on November 21, 2012 (ECF No. 3), and then moved for summary judgment following the completion of discovery (ECF No. 13).  Clark responded on June 29, 2013 (ECF No. 17), and the matter is now ripe for disposition.

## III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact."  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is

4

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." <u>Pignataro v. Port Auth.</u>, 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250.

**IV.  DISCUSSION**

Clark claims that his employment with Local 98 was terminated on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u>, and the PHRA, 43 Pa. Cons. Stat. § 951, as well as 42 U.S.C. § 1981. He says that he "was treated differently from his Caucasian counterparts," as he was the only employee fired for submitting gas reimbursements. Pl.'s Resp. 5; <u>see also</u> Compl. ¶¶ 50-52. Local 98 responds that Clark's coworkers were not similarly situated to him, as he was the only employee discovered to be submitting gas reimbursements without authorization. Def.'s

5

Mot. Summ. J. 1.  Local 98 therefore contends that he cannot establish the disparate treatment necessary to succeed on his claims of discrimination.

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to discharge any individual ... because of such individual's race."[1]  42 U.S.C. § 2000e-2(a)(1). A litigant can establish a violation of Title VII either by showing that the employer has a specific employment practice that serves no legitimate business goal and produces a substantial adverse impact on a protected group (that is, by establishing a disparate impact), or by demonstrating disparate treatment on the basis of a protected characteristic.  Equal Emp't Opportunity Comm'n v. Metal Serv. Co., 892 F.2d 341, 346-47 (3d Cir. 1990).  Here, Clark advances a disparate treatment theory, pursuant to which he can establish a Title VII violation by showing that he has "been singled out and treated less favorably than others similarly situated on the basis of [race]."  Id. at 347.  The disparate treatment theory hinges on

---

[1]      Pennsylvania courts interpret the PHRA in accord with Title VII, Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1084 (3d Cir. 1995), and a claim under 42 U.S.C. § 1981 generally requires the same elements of proof as an employment discrimination claim under Title VII, Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 267 (3d Cir. 2010).  Accordingly, the analysis regarding Clark's Title VII claim applies equally to his other two causes of action.

the intent of the employer, and so "proof of the employer's discriminatory motive is critical" to the analysis.  <u>Id.</u>

When, as here, there is no direct evidence of an employer's discriminatory animus, a plaintiff can establish discriminatory intent based on circumstantial evidence under the familiar <u>McDonnell Douglas</u> framework.[2] See <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  First, the burden of production is on the plaintiff to establish a prima facie case of discrimination.  <u>Burton v. Teleflex Inc.</u>, 707 F.3d 417, 426 (3d Cir. 2013).  If the plaintiff succeeds in making out a prima facie case, "then the burden of production shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the action."  <u>Anderson v. Wachovia Mortg. Corp.</u>, 621 F.3d 261, 271 (3d Cir. 2010) (internal quotation marks omitted).  If the defendant states such a reason, the presumption of discrimination raised by the prima facie case is rebutted, and plaintiff must show by a preponderance of the evidence that the defendant's explanation is actually a pretext for

---

[2]      Because Clark has produced no direct evidence of discriminatory animus, he cannot succeed on a "mixed motives" theory.  See <u>Starceski v. Westinghouse Elec. Corp.</u>, 54 F.3d 1089, 1095 n.4 (3d Cir. 1995) ("In a 'mixed-motives' or <u>Price Waterhouse</u> case, the employee must produce direct evidence of discrimination, <u>i.e.</u>, more direct evidence than is required for the <u>McDonnell Douglas/Burdine</u> prima facie case.").

discrimination.[3]  Id.; see also St. Mary's Honor Ctr. v. Hicks,
509 U.S. 502, 507-08 (1993) (explaining that, if a defendant
produces a nondiscriminatory reason for its action, plaintiff
has an opportunity to show "that the proffered reason was not
the true reason for the employment decision and that race was")
(citation and internal quotation marks omitted).  Throughout
this burden-shifting process, "the ultimate burden of proving
intentional discrimination always rests with the plaintiff."
Anderson, 621 F.3d at 271.

Local 98 argues that Clark has failed to establish his
prima facie case of discrimination.  Furthermore, assuming
arguendo that Clark has established a prima facie case, Local 98
says that he has not shown that the proffered nondiscriminatory

---

[3]       Although that step in the analysis is commonly
referred to as another shift in the burden of production, see,
e.g., Bequeath v. L.B. Foster Co., 267 F. Supp. 2d 779, 788
(W.D. Pa. 2005), that is not entirely accurate.  As the Supreme
Court has explained, once "the defendant has succeeded in
carrying its burden of production, the McDonnell Douglas
framework – with its presumptions and burdens – is no longer
relevant."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510
(1993).  Rather, at that point, "the trier of fact proceeds to
decide the ultimate question: whether plaintiff has proven that
the defendant intentionally discriminated against him because of
his race."  Id. at 511 (alteration and internal quotation marks
omitted).  In other words, plaintiff must meet his burden of
persuasion, which requires that he show that defendant's
proffered reason is not the actual reason for the adverse
action.  The burden of persuasion rests with him "at all times,"
Smith v. City of Allentown, 589 F.3d 684, 690 (3d Cir. 2009),
and so, strictly speaking, there is no "shift" in the burden at
the final step in the analysis.

reason for his termination – that is, his unauthorized submission of gas receipts – is pretextual.  The Court will address each contention in turn.

A. Prima Facie Case

To establish a prima facie case of discrimination under Title VII, a plaintiff must show "(1) that he is a member of a protected class; (2) that he is qualified for the position; (3) that he was either not hired or fired from that position; (4) under circumstances that give rise to an inference of unlawful discrimination."  Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (emphasis and internal quotation marks omitted).  Local 98 concedes that the first three of those elements are satisfied here, as Clark is a member of a protected class who was qualified to work in his position and yet suffered an adverse employment action.  Def.'s Mot. Summ. J. 8.  At issue is whether he has met his burden of establishing the fourth element of his prima facie case.

The burden of establishing a prima facie case of disparate treatment is not onerous, as its purpose is simply "to eliminate the most obvious, lawful reasons for the defendant's action."  Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999).  A plaintiff can satisfy his burden by presenting evidence upon which a "court can infer that if the employer's actions remain unexplained, it is more likely than

9

not that such actions were based on impermissible reasons."
Equal Emp't Opportunity Comm'n, 892 F.2d at 348.  One way that a
plaintiff can make such a showing is by demonstrating that he
was treated less favorably than a similarly situated employee
outside of the protected class.  Such disparate treatment raises
an inference of unlawful discrimination, as "we know from our
experience that more often than not people do not act in a
totally arbitrary manner."  Pivirotto, 191 F.3d at 353 (quoting
Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)).
Thus, when similarly situated employees are treated differently,
a reasonable factfinder can presume that the employer "based his
decision on an impermissible consideration such as race."  Id.

        Clark says that he was treated differently from his
two similarly situated Caucasian coworkers, Kevin Corazo and
Brian Young.  Pl.'s Resp. 5.  All three performed the same
duties – including driving on behalf of Local 98 – and yet only
Clark was fired.  Local 98 does not dispute those facts, but
contends that they are inadequate.  According to Local 98, Clark
was not similarly situated to Corazo and Young because "he was
caught breaking the rules and they were not."  Def.'s Mot. Summ.
J. 8.  In other words, Clark has not shown that he and his
coworkers engaged in similar misconduct, and thus Local 98
contends he has not established a prima facie case of disparate
treatment.  See Oakley v. Orthopaedic Assoc. of Allentown, Ltd.,

742 F. Supp. 2d 601, 608 (E.D. Pa. 2010) ("Employees are similarly situated when they have similar responsibilities and are held to similar standards," or "when their conduct on the job – or misconduct – is similar in nature.").

That argument has some persuasive force. Clark concedes that his supervisor never expressly told him to perform driving responsibilities, nor did his supervisor instruct him to submit gas receipts for reimbursement. Those facts set him apart from his coworkers, and thus support the conclusion that he was not similarly situated to them. Nonetheless, there are also facts that cut the other direction. In particular, the evidence shows not only that Clark and his coworkers performed the same functions under the same supervisor, but also that a Local 98 board member signed off on Clark's gas reimbursement requests on multiple occasions. Viewed in the light most favorable to Clark, those facts suggest that all three employees performed driving functions and were approved for gas reimbursements, yet only Clark was fired when he later attempted to submit his gas receipts. If that action remained unexplained, the evidence could be sufficient to support an inference of unlawful discrimination, which is all that is

required for a plaintiff to establish a prima facie case.[4]  <u>See</u> <u>Equal Emp't Opportunity Comm'n</u>, 892 F.2d at 348.

    B. <u>Pretext</u>

Because Clark has established a prima facie case of discrimination, the burden shifts to the defendant to produce "sufficient evidence to support a nondiscriminatory explanation for its decision."  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000).  Local 98 has clearly met that burden here, providing evidence that Clark's employment was terminated because he submitted gas receipts for reimbursement without proper authorization or instruction.  To defeat summary judgment, Clark must therefore "provide evidence from which a

---

[4]    Furthermore, it cannot be that the existence of any distinction between a plaintiff and his coworkers prevents the plaintiff from establishing a prima facie case, as there will likely be some distinguishing feature whenever a defendant is able to produce a legitimate nondiscriminatory reason for the adverse action.  Local 98's contention that Clark differs from his coworkers because he broke the rules is essentially a proffer of a legitimate reason for the termination.  As discussed in Section IV.B, that explanation is certainly sufficient to satisfy the defendant's burden under <u>McDonnell Douglas</u>, and thus to require Clark to demonstrate that the reason is merely a pretext for discrimination.  But the fact that a defendant states a legitimate reason for an adverse employment action does not automatically defeat the prima facie case itself.  Otherwise, a plaintiff would essentially have to demonstrate pretext as part of his prima facie case, which is not proper under <u>McDonnell Douglas</u>.  Put simply, that there is a distinction between a plaintiff and his coworkers sufficient to justify an employment action generally goes to the later steps in the <u>McDonnell Douglas</u> burden shifting; it does not mean that plaintiff and his coworkers were too different for their disparate treatment to raise an inference of discrimination.

factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." Burton, 707 F.3d at 426.  To make such a showing, the plaintiff must provide evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Id. at 427 (quoting Fuentes v. Perskie, 32 F.3d at 764).  A plaintiff can discredit a proffered reason by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation for its action "that a reasonable factfinder could rationally find them 'unworthy of credence.'" Id. (quoting Fuentes, 32 F.3d at 765).

Here, Clark points to no evidence suggesting that Local 98's proffered explanation for its action is pretextual. At best, Clark has produced evidence suggesting that some employees and board members of Local 98 knew he was submitting gas receipts, and that he could reasonably have presumed that his actions were proper.  Such evidence could be sufficient to support an inference that Local 98 was unreasonable in terminating his employment.  But Clark must do more than show that Local 98 was "wrong or mistaken" in deciding to fire him; he must "present evidence contradicting the core facts put

forward by the employer as the legitimate reason for its decision," such that a reasonable jury could conclude that the proffered reason is a disguise for discrimination.  <u>Tomasso v. Boeing Co.</u>, 445 F.3d 702, 706 (3d Cir. 2006) (internal quotation marks omitted).  Local 98 has presented substantial evidence that Clark was fired because, although he may have thought he could submit gas receipts for reimbursement, his immediate supervisor never authorized him to do so.  Clark not only fails to demonstrate any weaknesses or implausibilities in that explanation, he actually admits the essential facts upon which it is based – namely, that he was never instructed by his supervisor to perform driving functions or submit gas receipts, and that he was fired as soon as his supervisor discovered what he was doing.  Based on that evidence, no factfinder could reasonably infer that Local 98's focus on Clark's improper submission of gas receipts is a mere pretext for unlawful discrimination.

**V.    CONCLUSION**

          For the foregoing reasons, the Court will grant Defendant's motion for summary judgment and will enter judgment in favor of Defendant on all of Plaintiff's claims.  An appropriate order follows.